# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

———————————————————————

|  |  |  |
|---|---|---|
| SUSAN SMITH HAGER on behalf of herself and all others similarly situated, | : : : | Civil Action No. |
| Plaintiff, | : : | <u>Class Action Complaint</u> |
| v. | : : | <u>Jury Trial Demanded</u> |
| VERTRUE, INCORPORATED and ADAPTIVE MARKETING, LLC, | : : : | |
| Defendants. | : : | |

———————————————————————

Plaintiff, Susan Smith Hager, by her attorneys, Foley Hoag LLP and Meiselman, Denlea, Packman, Carton & Eberz P.C., as her class action complaint, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

### <u>Nature of this Case</u>

1.      This action seeks to redress a deceptive and otherwise improper business practice that Defendants Vertrue, Incorporated ("Vertrue") and Adaptive Marketing, LLC ("Adaptive Marketing") (collectively, "Defendants") are perpetrating.  Specifically, consumers provide Defendants with their confidential credit and bank account information to pay the monthly fee for Defendants' identity protection and credit information services.  Yet, instead of protecting this confidential information, Defendants deceptively manipulate the online process to impose unauthorized monthly charges on Plaintiff and other vulnerable consumers for unrelated and worthless consumer "membership" or "reward" programs.  Thus, consumers seeking identity protection and credit information services are unwittingly enrolled by Defendants in wholly unrelated, sham consumer "membership" programs purportedly offering them discounts on

various consumer goods.  As a result of Defendants' deceptive and improper actions, consumers, such as Plaintiff, have been charged unauthorized fees, resulting in Defendants' improper and unlawful monetary gain and benefit.

2.      Defendants' business model is based upon enrolling consumers in worthless "membership" or "reward" programs that Plaintiff and other Class members are unwittingly ensnared in when conducting an online consumer transaction.  In fact, consumers almost never legitimately join any of Defendants' various "membership" programs, nor do they authorize Defendants to charge their credit cards or debit from their bank accounts any monies for the bogus programs in which they are enrolled.

3.      Because there is virtually no legitimate demand for Defendants' consumer "reward" programs, Defendants prey on consumers' legitimate concerns about identity theft as a pretext for gaining access to consumers' confidential financial information in order to charge unauthorized fees for these additional unrelated and worthless "membership" programs.  When consumers contact Defendants to request that they remove and refund the unauthorized fees charged to their credit or debit cards, they are given the "runaround," and are unable to obtain refunds of the unauthorized charges

4.      By these practices, Defendants have established one of the largest unauthorized consumer billing operations in the United States.  In fact, there have been numerous consumer complaints to various Federal and State authorities concerning Defendants' deceptive business practices, and web sites are full of consumers who have complained about Defendants' unfair and deceptive practices.

5.      Most recently, the United States Senate Committee on Commerce, Science and Transportation began investigating Defendants' business practices.  The Chairman of this Senate

Committee, Senator John D. Rockefeller IV, sent a letter dated May 27, 2009 to Defendants noting that Defendants "have engaged in business and marketing practices on the internet that generate a high volume of consumer complaints" and specifically requesting detailed information from Defendants on their "***controversial [business] practices***."  The Senate Committee is investigating the very fraud at issue in this case explaining that:

> According to the Better Business Bureau, a number of media reports, and other online sources, consumers regularly complain that [Defendants] charge[] their credit and debit card on a monthly basis for services they are not aware they have purchased.  These complaints largely stem from [Defendants'] practice of acquiring consumers' personal information, including their credit card or debit account numbers, [when consumers are purchasing other services] . . . . Thousands of consumers have complained that they did not intend to authorize [Defendants] to make regular charges to their credit or debit cards . . . . [T]he Better Business Bureau has reported [Defendants] as having an 'unsatisfactory record with the Bureau due to a pattern of complaints concerning unauthorized charges to consumers' credit cards.'

6.      Specifically, the Better Business Bureau ("BBB") has assigned a grade of "F" to Defendants.  According to the BBB, it assigns grades from A to F with pluses and minuses.  A+ is the BBB's highest grade and F is the lowest.  The grade "represents BBB's degree of confidence that the business is operating in a trustworthy manner and will make a good faith effort to resolve any customer complaints."  Defendants' failing grade from BBB and the on-going Senate Committee investigation confirms that Defendants are not operating in a trustworthy manner or addressing customer concerns.

7.      This suit is brought pursuant to the consumer protection statute of the Commonwealth of Massachusetts, Mass. Gen. Laws ch. 93A, the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, and common law on behalf of a class of Massachusetts consumers who were deceptively charged fees or interest by Defendants, without first obtaining Plaintiff's and the Class' prior authorization or consent, during the period from January 1, 2004,

to the present.  It seeks, *inter alia*, compensatory damages, including, but not limited to, a refund

of all unauthorized fees charged to consumers; treble damages; reimbursement of expenses,

interest and fees incurred by Class members as a result of Defendants' scheme; attorneys' fees;

and the costs of this suit.

## Jurisdiction and Venue

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15

U.S.C. § 1693m.  This is an action for violation of 15 U.S.C. §§ 1693 *et seq.*

9.     Jurisdiction in this civil action is also authorized pursuant to 28 U.S.C. § 1332(d),

as minimal diversity exists, there are more than 100 class members, and the amount in

controversy is in excess of $5 million.

10.     This Court has supplemental jurisdiction over Plaintiffs' state statutory and

common law causes of action pursuant to 28 U.S.C. § 1367(a).

## Parties

11.     Plaintiff Susan Smith Hager is a citizen and resident of the Commonwealth of

Massachusetts.  Without Ms. Hager's authorization or knowledge, Defendants billed Ms.

Hager's credit card and have been making monthly unauthorized charges.

12.     Defendant Vertrue is a corporation established under the laws of the State of

Delaware, with its principal place of business located in Norwalk, Connecticut.

13.     Defendant Adaptive Marketing is a limited liability company established under

the laws of the State of Delaware, with its principal place of business located in Norwalk,

Connecticut.  Adaptive Marketing is located in the same building as Vertrue, shares personnel

with Vertrue, and markets the identical "membership programs" as Vertrue.  There exists a unity

of interest and ownership between Vertrue and Adaptive Marketing, and because Adaptive

Marketing is controlled, managed and operated by Vertrue without regard for corporate

individuality, each is the alter ego of the other.

      14.     Defendants do business throughout the United States, including in Massachusetts,

through operating and maintaining interactive websites – *vertrue.com, adaptivemarketing.com,*

*privacymatters.com, privacymatters123.com, athomerewards-program.com, yoursavingsclub-*

*program.com,* and *membershipme.com* – accessible to consumers in, and residents of,

Massachusetts.

**Operative Facts**

     A.     **The Rising Threat of Identity Theft and Consumers'**
          **Attempts to Protect Their Confidential Financial Information**

      15.     Identity theft is one the fastest growing crimes in the United States, claiming more

than ten million victims a year.  Identity theft occurs when someone improperly uses a

consumer's personal financial information to commit a fraud.  The Federal Trade Commission

("FTC") warns that identity theft is serious and that victims of credit identity fraud go through a

difficult and time-consuming ordeal to repair damage to their good name and credit record.

Increasingly, computer savvy entities have been turning to the internet to perpetuate this fraud.

      16.     Both Congress and the Massachusetts Legislature recognize that one of the best

ways to spot identity theft is for a consumer to monitor his or her credit report.  Thus, both

Congress and the Massachusetts Legislature have provided every American the right to a free

copy of their credit report each year and recommend that consumers check their credit report at

least once a year to correct errors and detect unauthorized activity.

      17.     Despite this broad grant of consumer rights to free credit reports, there are

dozens of websites hard at work trying to trick people into believing they are ordering a free

credit report or receiving privacy protection when in reality they are being enrolled in sham

5

"membership" programs.  The FTC has received numerous complaints from consumers who thought they were ordering their free annual credit report, but instead paid hidden fees or were enrolled in unwanted services.  These online operators use the offer of a "free" credit report as a way to capture consumers' personal information.  They then use this personal financial information to unknowingly enroll consumers in sham "membership" programs.

18.     Preying on consumers' legitimate concerns about identity theft, Defendants offer credit reports and privacy protection services to consumers through their Privacy Matters programs.  Privacy Matters claims to be "one of the nation's leading providers of credit management, identity theft protection and family safety products and services."  In reality, Defendants use these programs to obtain consumers' confidential financial information in order to charge them for unwanted, unauthorized and unrelated "membership" programs.

### B.     <u>Defendants' Deceptive Sales and Business Practices</u>

19.     Defendants are internet marketing services companies and offer credit reports and privacy protection services to consumers through their Privacy Matters programs.  For example, Defendants offer "Privacy Matters Identity" or "PMIdentity" which purports to provide "total Identity Theft Protection."  This program supposedly "gives [consumers] secure, online access to all [their] personal information so [they] can identify signs of ID Theft."  Consumers are offered a "free identity theft report" to "assess if [their] confidential information is exposed to thieves and determine what steps [they] can take to reduce [their] risk of identity theft."   Consumers are charged both $29.95 and $1.00 monthly for this program and promised "peace of mind" against identity theft.   However, instead of giving consumers the promised "peace of mind," Defendants use the very information they are being paid to monitor and protect to enroll consumers in

unrelated, sham consumer "membership" programs, including "AtHome Rewards," "YourSavingsClub" and "Savings Ace," and charge unauthorized monthly fees.

20.     Defendants also offer "Privacy Matters 1-2-3" which purports to offer consumers "unlimited access to 3-in-1 Credit Reports and Scores which merge information from TransUnion, Experian and Equifax into a single, easy-to-read credit report, [and] triple bureau credit monitoring which automatically alerts members to suspicious changes in their credit profiles."  Consumers are charged both $29.95 and $1.00 monthly for this program.  However, instead of receiving the paid for "protection," Defendants use the very information they are being paid to monitor and protect to enroll consumers in unrelated, sham consumer "membership" programs, including "AtHome Rewards," "YourSavingsClub" and "Savings Ace," and charge unauthorized monthly fees.

21.     Defendants offer numerous consumer "membership" programs.  Because there is almost no legitimate demand for these programs, Defendants enroll consumers visiting their privacy protection and credit information programs in completely unrelated, bogus "reward" programs without consumers' knowledge or consent.  Put differently, the success of Defendants' business model depends on "cramming" – a practice of imposing unauthorized charges – which Defendants are able to do when consumers innocently visit and order privacy protection and credit information services.  Defendants knowingly and willingly impose unauthorized charges on consumers.

22.     Defendants do not send bills to consumers requesting payment or authorization for payment.  Rather, Defendants collect fees by charging, without prior authorization, consumers' credit cards, bank accounts, and debit cards.  Consumers are charged monthly fees that range from $1.00 to $29.95 per month for sham "memberships" which they never ordered.

23.     The sequence of events upon which Plaintiff predicates her claims is clear:  a person signs up for privacy protection and credit monitoring services paying with a debit or credit card.  Thereafter, at least one, but usually several, unauthorized charges appear on each Class member's debit or credit card purportedly for one of Defendants' worthless consumer "reward" programs.  None of the charges are authorized, and Defendants do not receive prior permission before charging each Class member's debit or credit card.

24.     Defendants have been able to engage in the above referenced consumer fraud by deceptively manipulating the online process by which Plaintiff and other Class members order privacy protection and credit monitoring services from Defendants.

25.     Moreover, Plaintiff and the Class repeatedly attempted to, and did at times successfully, contact Defendants requesting that they remove and credit their debit or credit cards for the unauthorized charges.  Not surprisingly, however, the vast majority of Plaintiff's and the Class' requests were ignored.  In fact, some Class members were compelled to cancel their debit or credit cards in order to stop Defendants from continuing its practice of charging unauthorized fees.

26.     As explained above, Plaintiff seeks to redress the unfair and deceptive manner in which Plaintiff was deceptively enrolled in Defendants' worthless membership programs, and charged monthly "membership" fees to which she had not knowingly consented.

C.     **Plaintiff Is Saddled With Unauthorized Charges**

27.     On or about May 1, 2008, Plaintiff Hager enrolled in "PMIdentity" and

"PrivacyMatters" and paid for her order with a credit card.  To proceed through the purchasing

process, Plaintiff Hager provided her personal information including her name, credit card

number and its expiration date.

28.     Since that original purchase, over three dozen unauthorized charges have

appeared on Plaintiff Hager's credit card for three different sham "reward" or "membership"

programs offered by Defendants.  These reward programs are "AtHome Rewards,"

"YourSavingsClub" and "Savings Ace."  Plaintiff Hager was charged between $1.00 and $29.95

from May 2008 through May 2009 for these sham programs.  Plaintiff Hager never enrolled in

AtHomeRewards, YourSavingsClub, Savings Ace or any other consumer reward program

offered by Defendants.  Plaintiff Hager was specifically seeking privacy protection and credit

report information on the internet.  Instead of protecting Plaintiff's confidential financial

information, Defendants knowingly used Plaintiff Hager's financial information to enroll her in

unrelated, sham "reward" programs.

29.     AtHomeRewards purports to offer consumers savings "on decorating, electronics

and home improvement needs."  Plaintiff Hager's credit card was charged twenty-two times for

this unauthorized program between May 2008 and March 2009.

30.     Specifically, on May 20, 2008, June 27, 2008, July 28, 2008, August 26, 2008,

September 25, 2008, October 25, 2008, November 24, 2008, December 24, 2008, January 23,

2009, February 22, 2009, and March 24, 2009, eleven charges, each in the amount of $1.00, were

billed to Plaintiff Hager's credit card.  All eleven charges are credited to "AtHomeRewards,"

purportedly as payment for "membership" fees in AtHomeRewards.  None of these charges were

31.     In addition, on May 26, 2008, June 24, 2008, July 24, 2008, August 25, 2008, September 22, 2008, October 22, 2008, November 21, 2008, December 21, 2008, January 20, 2009, February 19, 2009, and March 21, 2009, eleven additional charges, each in the amount of $29.95, were billed to Plaintiff Hager's credit card.  All eleven charges are credited to "AtHomeRewards," purportedly as payment for "membership" fees in AtHomeRewards. None of these charges were authorized by Plaintiff Hager, and Defendants did not receive prior permission from Plaintiff Hager before charging her credit card.

32.     Plaintiff Hager was also enrolled without her knowledge or consent in YourSavingsClub.  This program purports to offer members "savings at popular stores, theme parks, movie theaters and restaurants" as well as "home needs, clothes, books, music, family entertainment and fun."  Every month from May 2008 through May 2009, Plaintiff Hager was charged a $1.00 fee for this program.  Specifically, on May 20, 2008, June 16, 2008, July 16, 2008, August 15, 2008, September 15, 2008, October 14, 2008, November 13, 2008, December 14, 2008, January 12, 2009, February 11, 2009, March 21, 2009, April 12, 2009 and May 17, 2009, thirteen charges, each in the amount of $1.00, were billed to Plaintiff Hager's credit card. All thirteen charges are credited to "YourSavingsClub," purportedly as payment for "membership" fees in YourSavingsClub.  None of these charges were authorized by Plaintiff Hager, and Defendants did not receive prior permission from Plaintiff Hager before charging her credit card.

33.     Plaintiff Hager was also enrolled without her knowledge or consent in Savings Ace.  This program purports to offer discounts at over 500 online stores.  On March 21, 2009 and

April 20, 2009, two charges, each in the amount of $19.95, were billed to Plaintiff Hager's credit card. Both are credited to "Savings Ace," purportedly as payment for "membership" fees in Savings Ace. None of these charges were authorized by Plaintiff Hager, and Defendants did not receive prior permission from Plaintiff Hager before charging her credit card.

34.     Defendants enrolled Plaintiff Hager in AtHomeRewards, YourSavingsClub and Savings Ace without her knowledge or consent. Plaintiff Hager did not receive any bills requesting payment or authorization for payment for these programs. Nor did she receive any documentation regarding her enrollment in these membership programs and has derived no benefit from her "membership" in these programs.

35.     Plaintiff Hager repeatedly attempted to, and did at times successfully, contact Defendants requesting that they remove and credit her credit card the unauthorized charges. The few times Plaintiff Hager was able to get through to Defendants' customer service departments and speak with a live person, she was told that the charges would be credited, and that she would no longer be charged any fees in the future. Plaintiff Hager's demand to Defendants to stop their deceptive practices was ignored, and she of course did not receive a refund, nor did the unauthorized charges stop. After months of attempting to stop the monthly charges and obtain a refund of the fees charged, Plaintiff Hager was compelled to cancel her credit card in order to stop Defendants from continuing their practice of charging unauthorized fees.

36.     The imposition of unauthorized charges on Plaintiff totaling $393.35 represents a deliberate profit-making scheme by Defendants. Defendants knowingly and willingly impose unauthorized charges on Plaintiff and the Class. These sham charges for enrollment in bogus membership programs provide Defendants with a consistent, lucrative and substantial source of revenue.

## Class Action Allegations

37.     Plaintiff bring this action on her own behalf and additionally, pursuant to Rule 23

of the Federal Rules of Civil Procedure, on behalf of a class of all persons in Massachusetts

whose credit card, bank debit card, or bank account information was obtained deceptively and/or

intercepted by Defendants, and whose credit cards, bank debit cards or bank accounts were

charged fees or interest by Defendants for merchandise and/or services and/or membership

programs never authorized, consented to, ordered or requested, during the period from January 1,

2004, to the present.

38.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of

Defendants; any entity in which Defendants have or had a controlling interest, or which

Defendants otherwise control or controlled; and any officer, director, employee, legal

representative, predecessor, successor, or assignee of Defendants.

39.     This action is brought as a class action for the following reasons:

        a.      The Class consists of thousands of persons and is therefore so numerous

that joinder of all members, whether otherwise required or permitted, is impracticable;

        b.      Defendants have acted or refused to act on grounds that apply generally to

the Class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the Class as a whole;

        c.      There are questions of law or fact common to the Class that predominate

over any questions affecting only individual members, including:

                i.      whether Defendants violated the Massachusetts Unfair Trade

Practices Act, Mass. Gen. Laws c. 93A §§ 2(a) *et seq*.;

ii.     whether Defendants violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.*;

iii.    whether Defendants are being unjustly enriched by, among other things, charging Plaintiff and the Class unauthorized fees;

iv.     whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

v.      whether Defendants should be enjoined from the continued practices and policies with respect to the imposition of unauthorized charges and fees upon unsuspecting consumers.

d.      The claims asserted by Plaintiff are typical of the claims of the members of the Class;

e.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including related litigation involving consumer fraud;

f.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain its ill-gotten gains;

ii.     It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.     When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.     A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions; and

v.     The lawsuit presents no difficulties that would impede its management by the Court as a class action.

vi.     Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate; and

g.     The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendants and of inconsistent or varying adjudications for all parties.

40.     Defendants' violations of Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws c. 93A §§ 2 *et seq.*, and Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.*, are applicable to all members of the Class, and Plaintiff is entitled to have Defendants enjoined from engaging in illegal, deceptive and unconscionable conduct in the future.

### FIRST CAUSE OF ACTION
### (Violation of Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws c. 93A)

41.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 40 above as if fully set forth herein.

42.     Through their conduct described above, Defendants have engaged in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws c. 93A §§ 2 *et seq.*("MUTPA"), whose stated terms and intent is to protect consumers from

unfair methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce.

43.     Defendants' unfair or deceptive practices were a willing and knowing violation of

MUTPA.

44.     Plaintiff and the Class have suffered an ascertainable loss of money or property as

a result of Defendants' actions.

45.     By reason of the foregoing, Defendants have violated MUTPA and are liable to

Plaintiff and the Class, pursuant to Mass. Gen. Laws c. 93A §§ 2 *et seq*., for the damages that

they have suffered as a result of Defendants' actions, the amount of such damages to be

determined at trial, plus trebling and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*)**

46.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through

45 above as if fully set forth herein.

47.     The Electronic Funds Transfer Act ("EFTA") provides a basic framework

establishing the rights, liabilities, and responsibilities of participants in an electronic fund

transfer system. 15 U.S.C. §§ 1693 *et seq*.

48.     Plaintiff  and the Class maintained "account[s]" as that term is defined in 15

U.S.C. § 1693a(2), and are "consumer[s]" as that term is defined in 15 U.S.C. §1693a(5).

49.     Defendants engaged in "unauthorized electronic fund transfers," as that term is

defined in 15 U.S.C. § 1693a(11), by charging Plaintiff's and the Class' credit or debit cards

without their authorization.

50.     EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's

account may be authorized by the consumer only in writing, and copy of such authorization shall

15

be provided to the consumer when made."  15 U.S.C. § 1693e(a).  In the case of preauthorized

transfers from a consumer's account to the same person which may vary in amount,. . .the

designated payee shall, prior to such transfer, provide reasonable advance notice to the

consumer, in accordance with the regulations of the Board, of the amount to be transferred and

the scheduled date of the transfer."  15 U.S.C. § 1693e(b).

     51.     EFTA's implementing regulations, known as Regulation E and codified at 12

C.F.R. §§ 205 *et seq*. provide: "Preauthorized electronic fund transfers from a consumer's

account may be authorized only by a writing signed or similarly authenticated by the consumer.

The person that obtains the authorization shall provide a copy to the consumer."  12 C.F.R. §

205.1(d).  According to the Official Staff Interpretations ("OSI") of Regulation E, EFTA's

requirement that electronic fund transfers "be authorized by the consumer 'only in writing' cannot

be met by a payee's signing a written authorization on the consumer's behalf with only an oral

authorization from the consumer."  Regulation E, Supp. I, Part 10(b), ¶ 3.  When "'a third-party

payee fails to obtain the authorization in writing or fails to give a copy to the consumer, . . . it is

the third-party payee that is in violation of the regulation."  Regulation E, Supp. I, Part 10(b), ¶ 2.

     52.     Defendants violated EFTA because they made electronic fund transfers from

Plaintiff's and the Class' accounts without obtaining prior written authorization.  Each

unauthorized electronic fund transfer by Defendants was a separate and continuing violation of

EFTA.  Moreover, in further violation of EFTA, Defendants did not provide Plaintiff and the

Class with copies of their authorizations or provide reasonable advance notice to Plaintiffs and

the Class of the amount to be transferred and the scheduled date of the transfer.

53.     Accordingly, pursuant to 15 U.S.C. § 1693m, Plaintiffs and the Class seek damages, statutory damages, costs of suit, including reasonable attorneys' fees, and such other further relief as the Court deems appropriate.

**THIRD CAUSE OF ACTION**
**(Unjust Enrichment)**

54.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 53 above as if fully set forth herein.

55.     By engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiff and the Class and are required, in equity and good conscience, to compensate Plaintiff and the Class for damages suffered as a result of Defendants' actions.

56.     Defendants knowingly and willingly accepted monetary benefits from Plaintiff and the Class, while providing Plaintiff and the Class with services and/or membership in programs which were worthless and/or never authorized or consented to by Plaintiff and the Class.

57.     Under the circumstances described herein, it is inequitable for Defendants to retain the full monetary benefit at the expense of Plaintiff and the Class.

58.     By engaging in the conduct described above, Defendants have unjustly enriched themselves at the expense of Plaintiff and the Class and are required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of Defendants' actions.

59.     By reason of the foregoing, Defendants are liable to Plaintiff and the Class for damages incurred as a result of Defendants' actions, the amount of such damages to be determined at trial.

17

## FOURTH CAUSE OF ACTION
### (Declaratory Relief Pursuant to 28 U.S.C. §§ 2201 *et seq.*)

60.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

61.     An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiff and Defendants for which Plaintiff desires a declaration of rights.

62.     A declaratory judgment is necessary to determine Plaintiff's and Class members' rights in connection with unauthorized charges imposed upon Plaintiff and the Class for Defendants' purported membership programs, including, among other things, a declaration that all Defendants have violated MUPTA, c. 93A §§ 2 *et seq.*; and a declaration that Defendants have violated EFTA, 15 U.S.C. §§ 1693 *et seq.*

WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendants as follows:

1.      Certifying this action as a class action, with a class as defined above;

2.      On Plaintiff's First Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, trebled;

3.      On Plaintiff's Second Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus statutory damages, attorneys' fees and costs;

4.      On Plaintiff's Third Cause of Action, awarding against Defendants the damages that Plaintiff and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

5.      On Plaintiff's Fourth Cause of Action, declaring that Defendants' practice of unauthorized credit and debit card charges is misleading, deceptive and improper, preliminarily and permanently enjoining Defendants from continuing their deceptive policies relating to the practice of deceptively charging Plaintiff and the Class fees without prior authorization, ordering Defendants to disgorge all profits earned in connection with the improper and impermissible expropriation of fees through their policy and practice of charging Plaintiff's and the Class' credit and debit cards, without consent and prior authorization, and ordering Defendants to take immediately all steps reasonably necessary to disclose their policies of charging fees without prior authorization and consent;

6.      Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

7.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Respectfully submitted,

SUSAN SMITH HAGER on behalf of
herself and all others similarly situated,

By her attorneys,

/s/ Kenneth S. Leonetti
Kenneth S. Leonetti, BBO # 629515
Amrish V. Wadhera, BBO # 667495
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: (617) 832-1000
Fax: (617) 832-7000

Of counsel:

Jeffrey I. Carton, Esq.
Jerome Noll, Esq.
Annette C. Rizzi, Esq.
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
jcarton@mdpcelaw.com

DATED:  July 23, 2009